CASE No. 1123.

MANGUM v. PIESTER.

1. Testator (who died in 1833) devised his real estate to his widow for life, with remainder to his son W., and, "if W. should die without issue, all the interest he has in my estate to go to H., and if both W. and H. should die without issue, then" over. *Held*, that the event fixed for the limitation to H. to take effect was *not* the death of W. without living issue during the *life-time of the widow.*

2. But an indefinite failure of issue to W. is the well-ascertained meaning of the words used by testator, and hence the limitation to H. is void for remoteness.

3. The phrase "die without issue" considered, particularly in the light of the rules governing contingent remainders and executory devises, and when restricted by qualifying words. Some differences between contingent remainders and executory devises stated, and the reasons upon which founded.

4. Neither the limitation to H. by name nor the use of the adverb "then" restricts the generality of the phrase "die without issue" to a failure of issue at the death of W.

5. The widow of testator conveyed all of her interest in these lands to her son W., who conveyed to P., and P. held adversely under his deed. W. died, and, afterwards, his mother. *Held*, that by the conveyance to W. the life-estate was merged in W.'s greater estate and was thus extinguished, and if the limitation to H. was good as an executory devise, the statute of limitations would commence to run against him under P.'s adverse claim, from the death of W., and would not be postponed until the death of the life-tenant.

———

Before WALLACE, J., Newberry, May, 1880.

This was an action commenced June 21st, 1874, by the children of Hillary R. Mangum against the executors and devisees of David B. Piester, and against Thomas M. Neel, Henry Koon and John R. Leavell—the last-named as a creditor of David B. Piester—for the recovery of a tract of land. The plaintiffs claimed under the will of ·C. Griffin, which was as follows:

*In the name of God, amen.* I, Christopher Griffin, being of sound and disposing mind and memory, but weak in body, and calling to mind the uncertainty of life, and being desirous to dispose of all my worldly estate. God has blessed me with, do make and ordain this my last will in the manner following, that is to say: I desire that shortly after my decease all my personal estate shall be sold at public auction on a credit of one and two years, and out of the moneys arising therefrom all my just debts and funeral expenses be paid. After my debts and funeral expenses are paid, I will and bequeath unto my beloved wife, Phœbe Griffin, all my plantation now in cultivation, also, one-third part of the proceeds of my personal estate, after the debts and funeral expenses are paid, during her natural life-time, to be disposed of after her death as will be hereafter mentioned—my wife, Phœbe Griffin, being bound to board, clothe and educate my son, Wm. B. Griffin, or in failure or not performing the above requirements to my son, my wife, Phœbe, is to be charged with two-thirds of the rent of the plantation.

I will and bequeath unto my son, Hillary R. Mangum (or Griffin), the sum of five hundred dollars when he arrives at the age of twenty-one years. If he should die not having any issue, the above legacy to become part of my estate.

I will and bequeath unto my beloved son, William B. Griffin, the balance of my personal estate, and at the death of my wife, Phœbe, all my real estate, with the above-mentioned one-third of my personal estate bequeathed to the above-mentiond Phœbe during her life-time.

If the before-mentioned William B. Griffin should die without issue, all the interest he has in my estate is to go to my son, Hillary R. Mangum (or Griffin); and in case the above-mentioned William B. Griffin and Hillary R. Mangum (or Griffin) should die without issue, then all my estate, real and personal, to be equally divided between my four sisters, namely, Elizabeth Pitts, Sarah Griffin, Martha Barksdale and Lucinda Griffin; and, further, I constitute and appoint my friend, Bluford F. Griffin, executor of this my last will and testament, revoking all former wills.

In testimony whereof, I have hereunto set my hand and affixed my seal this twenty-second day of January, 1832.

CHRISTOPHER GRIFFIN.    [L. S.]

This will was properly attested.

All the issues of law and fact were referred to J. F. J. Caldwell, Esq., who, in an able report, held that Mangum's heirs were not estopped from asserting their claim; that no one but Mrs. Griffin and W. B. Griffin could object to the provisions of the will in favor of the bastard, Mangum; that the limitation over to Mangum was upon the death of W. B. Griffin without issue in the life-time of his mother, which was not too remote, and which had occurred; that D. B. Piester did not hold adversely for ten years, nor had his alienee, Neel, nor his devisees, and while the possession of ancestor and heir might be tacked together to make up the full statutory bar, that of devisor and devisee could not, the devisee being a purchaser, and not holding by descent.

Exceptions were taken by defendants to this report, and the case was heard by the Circuit judge upon these exceptions. He sustained the referee in his conclusions as to the estoppel, and the excessive provision for Mangum; but sustained the exceptions to his other findings, holding that the limitation over to Mangum was too remote, and that the Statute of Limitations commenced to run in favor of Piester and his assignee, Neel, at

the death of W. B. Griffin, and continued to run in favor of the devisees, who were also the heirs-at-law of Piester.

From this decree, appeal was taken to this court, by the plaintiffs, who urged their appeal upon the following exceptions:

1. Because his Honor erred in holding that the limitation over to Hillary R. Mangum, created by the will of Christopher Griffin, was too remote.

2. That his Honor erred in holding that the right of Hillary R. Mangum to bring this suit accrued to him upon the death of William B. Griffin, whereas it is contended that such right did not accrue to him until the death of Phœbe Wallace, and that, therefore, the Statute of Limitations did not run against Hillary R. Mangum until then.

3. That his Honor erred in holding that the Statute of Limitations did not cease to run at the death of David B. Piester, (to wit, August 20th, 1873,) but that it continued to run until the death of Hillary R. Mangum.

4. Because his Honor erred in holding that the plaintiffs are barred by the Statute of Limitations from bringing their action, whereas it is contended that the statute does not bar the plaintiff's action against any of the defendants.

5. Because the decree is contrary to the law and evidence in this case.

*Mr. J. Y. Culbreath,* for appellant.

In cases of great doubt the expression of the legislative desire might incline the balance. 11 *Rich.* 489. The act of 1853 construes the meaning of the phrase "dying without issue." But in this case, there was a precedent life-estate, and, therefore, testator was providing for the contingency of W. B. Griffin's death without issue, before his mother's died, or, if with issue, the death of such issue before the termination of the life-estate. This view is sustained by the cases in 7 *Rich. Eq.* 105; 6 *Id.* 26, 83; *Spears Eq.* 312, 402; 10 *S. C.* 56; 1 *Hill Ch.* 265; and by 2 *Jarm. Wills* *693. Any words which indicate an intention in the testator to confine a failure of issue to a dying without issue living at the death of the first taker, will be sufficient to rebut

the construction of an indefinite failure of issue.   14 *N. H.* 215 ; 6 *Harris* 72 ; 3 *Md. Ch.* 257.   As to the Statute of Limitations, plaintiffs were minors when their father died, and still are.   Mangum took under Griffin's will an executory devise. 2 *Bl. Com.* 172.   His interest could not be affected by deed of Phœbe Griffin to W. B. Griffin, nor by deed to Piester ; for this latter deed was not recorded until February, 1867, and the former, never.   Mangum could not bring action until Phœbe's death, for until then he was not entitled to the possession, and Piester had her life-estate.   His rights were not affected by these conveyances.   2 *Minor Inst.* 375.   The conveyance to Neel by a disseisor carried no right.   *Rice* 10.   Peister's devisees obtained no right from Peister, who had not matured title.   A devise is only an alienation by purchase.   2 *Bl. Com.* 287. These devisees have held by purchase and not by descent cast.

*Mr. J. W. Ferguson,* on same side.

Argument of *Mr. J. M. Baxter,* deceased, and *Messrs. Geo. S. Mower* and *T. S. Moorman,* contra.

November 21st, 1881.   The opinion of the court was delivered by

SIMPSON, C. J.   Christopher Griffin, late of Newberry county, died in 1832 or 1833, leaving a last will and testament, in which, among other things, he devised his real estate to his widow for life, and at her death to his son, William B. Griffin, with the further provision that if his son, William B. Griffin, should *die without issue,* " that all the interest he has in my estate is to go to my son, Hillary R. Mangum (or Griffin) ; and in case the above-mentioned William B. Griffin and Hillary R. Mangum (or Griffin) should *die without issue,* then all my estate, real and personal, to be equally divided between my four sisters, Emily Elizabeth Pitts, Sarah Griffin, Martha Barksdale and Lucinda Griffin."

Mrs. Phœbe Griffin, who afterwards intermarried with Bennett Wallace, conveyed her life-estate in the land in January, 1854, to W. B. Griffin, who, on the same day, for valuable con-

sideration, conveyed said land to D. B. Piester, who then conveyed ninety-two acres thereof to Jacob R. Schumpert, who, on December 6th, 1871, conveyed to defendant, T. M. Neel. D. B. Piester continued in possession of the remaining 522 acres from the date of the deed of W. B. Griffin to him, in January, 1854, until his death, having, during his life, mortgaged 521 acres to defendant, Henry Koon, to wit, on January 9th, 1872.

Piester died in 1873, leaving a will, in which he directed his executors to sell any portion of his estate, real or personal, sufficient to pay debts; and after the payment of his debts he gave the whole estate to his wife and children. Under this will his family have remained in possession. W. B. Griffin died in November, 1861, his mother, the life-tenant, surviving him until January 24th, 1864, when she died. Hillary R. Mangum died in February, 1874.

This action was commenced June 21st, 1874, by the children of Hillary R. Mangum, claiming the land in question on the ground that William B. Griffin, having died without issue living at his death, their father became entitled to said land, and their father having since died, the land descended to them as his heirs-at-law. The claim of the plaintiffs was resisted below on several grounds:

*First.* It being admitted that Hillary R. Mangum was a natural son of Christopher Griffin, the testator, the defendants relied upon the act of 1795 prohibiting a father, having a lawful wife or child, giving by deed or will more than one-fourth of the clear value of his estate to a concubine or to his illegitimate child. *Second.* They relied on the doctrine of estoppel, insisting that Hillary R. Mangum, having stood by and silently permitted Piester, after his purchase, to put up valuable improvements on his land, he and those claiming under him were thereby estopped from now setting up claim to the land. *Third.* They set up the remoteness of the limitation to Mangum, and claim, on that account, that it was void; and, *Fourth,* They interposed the Statute of Limitations. Judge Wallace, who heard the case below, overruled the two first grounds of defense, but sustained the two last.

The plaintiffs have appealed, their exceptions involving the

two questions decided for the defense below, to wit: Was the judge in error in holding that the limitation to Hillary R. Mangum was void for remoteness, and also in allowing the Statute of Limitations to be successfully interposed?

The first point made in the argument in behalf of the appellants is: That the event fixed for the limitation to Mangum was the death of W. B. Griffin during the life of the life-tenant, Mrs. Phœbe Griffin. And W. B. Griffin, having died during the life of the life-tenant, it is contended that this limitation took effect at his death, and the cases of *Evans* v. *Godbold*, 6 *Rich. Eq.* 26; *Schoppert* v. *Gillam, Id.* 83; *Anderson* v. *Smoot, Spears Eq.* 312; *Vidal* v. *Verdier, Id.* 402, and *Blum* v. *Evans*, 10 *S. C.* 56, are relied on to sustain this proposition.

We do not think that these cases are applicable to the case at bar. In the case of *Vidal* v. *Verdier, supra,* which is the strongest case in this direction, it is true that the court did construe the will as intending to fix the death of the first taker in remainder before the death of the life-tenant as the event for the limitation over to take effect, but that case, as will be found upon examination, turned upon the construction of the words "in case of the death," which were embraced in the phraseology used. These words do not appear, in the case now before the court, in connection with the limitation to Mangum.

Besides, *Vidal* v. *Verdier* was fully discussed afterwards by Chancellor Harper in the case of *Yates* v. *Mitchell*, decided in 1845, and found in 1 *Rich. Eq.* 265, where that able chancellor defines and limits the principle laid down there within its proper boundary, and which excludes its application here. He says that *Vidal* v. *Verdier* was decided on the principle "that when a testator, giving in remainder after a life-estate, uses one set of expressions denoting that the remainderman is to take an absolute estate, and another set of expressions limiting him to an estate for life, with remainder to his issue, and a limitation over in the event of his not having issue, this apparent repugnancy may be reconciled by restricting the dying without issue to the life-time of the tenant for life, thus permitting every part of the will to have its proper effect. If he dies during the life-time of the tenant for life, leaving issue, the issue will take as purchasers

under the will; if without issue, the limitation over will have effect; but if he survives the tenant for life, the estate is absolute in him." But he said, further, that this had nothing to do with the case he was then discussing, because, in that case, there was not a double set of expressions, indicating different estates conveyed, as in *Vidal* v. *Verdier.*

So we say here, as to the case now before the court, and for the same reason. Had W. B. Griffin left issue, beyond doubt they would have taken by inheritance, and not by purchase, showing that a fee was conveyed by way of remainder to him, which vested in right at the death of his father, to be enjoyed in possession at the death of his mother. There is not a word in the will which indicates that the testator intended his son, W. B. Griffin, should take an estate for life with remainder to his issue in any event.

In the case of *Blum* v. *Evans,* 10 *S. C.* 56, the will was executed after the act of 1853 on the subject of words of limitation, and the last constitutes a wide distinction between that case and this, and no doubt had much to do in controlling the judgment of the court.

We do not think that this point, though earnestly and ably presented by the junior counsel of appellant, can be sustained either upon principle or upon the authorities cited. We will proceed then to the consideration of the case as dependent upon the other questions raised.

*First.* Is the limitation over to Hillary R. Mangum void for remoteness? The limitation to Mangum is dependent upon the event that William B. Griffin should "die without issue." Do these words import an indefinite failure of issue, or can they be restricted to a certain time competent, within the rules of law, upon which a limitation over can take effect by way of executory devise? Did the testator use these words indicating that if, at any time in the future, the issue of William B. Griffin should become extinct, then the estate should go over to Mangum? or did he mean only that if, at the death of Griffin, there should be no issue, then the limitation should take effect? These questions must turn upon the construction of the phrase "dying without issue," as interposed by their own inherent meaning, or

as controlled, if they may be, by their connection with other expressions in the will.

These words, and words of similar import, have been a prolific source in the past of numerous and bitter legal contests, reaching far back into our judicial history. They have given rise to some of the most profound and abstruse discussions in our books, and they have formed the basis of numerous learned opinions of the law and chancery courts, both of England and America. Our own reports are full of such opinions, and they are found in the reports of all the States. It would seem, then, that all difficulty surrounding this subject ought to have been dissipated long since, and the way through these words made so clear that no one at this day should err therein; but such is not the fact. Notwithstanding all the lights afforded by the decisions of the past, and the profound special discussions of this subject by eminent and most able text writers on real property and estates therein, legal minds still fail frequently to agree as to the true intent and meaning of instruments in which these words are found, and especially in their application to a case in hand, and, as a consequence, almost every paper in which such terms have been employed, even at the present day, sooner or later appears in a court of last resort for adjudication. We are not much surprised, therefore, to see this case before us.

Without referring at this time to the different-text books and numerous decisions which we have examined, and through which we have reached our conclusions, we feel authorized to say, in the beginning, that there are two classes of cases in which these words constitute the pivotal point, and upon the construction of which they depend. The first class embraces all those cases in which the question arises whether the term "issue," as used in the instrument, was employed to denote an indefinite line of succession of descendants to take the estate by inheritance, or to denote a class of persons to take as purchasers at a fixed time. In other words, whether the term "issue" is a word of limitation, indicating that the first taker has the whole interest conveyed, descendible to his lineal descendants *ad infinitum*, or whether it is a word of purchase indicating that the first taker is only entitled to a life-estate with remainder to such persons as may

answer the description of the term " issue " at the death of the first taker.

The second class embraces all those cases in which it is admitted that the fee in the first instance is conveyed to the first taker, but an effort is made to transfer this fee upon the happening of a specified contingency from him to another by way of executory devise. In other words, those cases where the attempt is made to mount a fee upon a fee, which can be done only by executory devise. The difference between the two classes is that the first involves the law of contingent remainders and the second that of executory devises. The case now before the court belongs to the second class; the case of *Mendenhall* v. *Mower, ante p.* 303, belongs to the first class. These two cases will fully illustrate the different character of the two classes, and the principles of law applicable to each.

The precise question then, in this case, when brought down to its last analysis, is: Does the will of Christopher Griffin contain a legal executory devise, by which a fee in the land in dispute was devised to Hillary R. Mangum, after a fee already devised to W. B. Griffin—the fee to Hillary R. Mangum to take effect in him upon the defeat of the fee in Griffin upon the contingency specified? Or, to state it in another and shorter form, Can the will of Christopher Griffin be regarded as an executory devise in favor of Hillary R. Mangum?

An executory devise is a limitation by will of a future contingent interest in lands contrary to the rules of limitation of contingent estates in conveyances at law. If the limitation by will does not depart from those rules prescribed for contingent remainders, it is in that case a contingent remainder and not an executory devise. 4 *Kent* 265. For instance, among the rules governing contingent remainders is one which forbids an estate to be limited over to another after a fee already granted. In such case there can be no such thing as defeating the fee already granted and transferring it to another by way of remainder, because a remainder implies something left, which cannot be the case after the whole has once been disposed of. Yet, while this cannot be done by way of contingent remainder, it may be done by an executory devise, which, according to the definition above,

allows a departure from the rules of law governing contingent remainders. And this being an effort to create a fee after a fee, is a case of departure denied by contingent remainders but allowed by executory devises.

So, too, under the common law conveyances, a freehold interest in real property could not be limited to commence *in futuro*, because such interests were established under the feudal system, and under that system livery of seizin was necessary to the creation of a freehold, and as livery could not be given *in futuro*, a future freehold could not be created at common law. Neither at common law could a fee be mounted on a fee. In conveyances at law, it is true, a provision may be made for the defeasance of a fee, but not then for its transfer to another at some future period and upon some specified contingency.

These, and some others, being difficulties which our legal ancestors found surrounding conveyances at common law, which, in their opinion, demanded remedy, the executory devise was intended for that purpose. Hence it allows a freehold to be created *in futuro* without a particular precedent estate to support it, and by it a fee may be created after a fee. But at the same time the common law abhorred a perpetuity, and to prevent perpetuities in executory devises, to which they would have inevitably led if left unguarded, it was established as a part of the machinery of executory devises that the contingency upon which the limitation intended was to take effect should not be postponed longer than a life or lives in being and twenty-one years and a fraction of another year thereafter. So that in all these cases, involving the validity of an executory devise, the main point to be considered is, has the contingency upon which the limitation is to take effect been fixed within the period of a life or lives in being and twenty-one years and a fraction after? If so, the executory devise is good and the limitation valid. If not, it is bad, and the limitation void for remoteness.

Now, was the event upon which Christopher Griffin intended the limitation in favor of Hillary R. Mangum should take effect, fixed by him to happen within the prescribed period? The exact language of the will is : " If the before-mentioned William B. Griffin should die *without issue,* all the interest he has in my

estate is to go to my son Hillary R. Mangum (or Griffin); and in case the above-mentioned William B. Griffin and Hillary R. Mangum should die without issue, then all my estate to be equally divided between my four sisters," naming them.

From this language it will be seen that the event upon which the limitation to Hillary R. Mangum was to take effect was the non-existence of William B. Griffin's issue after his death. This non-existence of William B. Griffin's issue might be found to be the fact at an indefinite period after his death when the last of his lineal descendants died, or it might be the case at the moment of his death.

If Christopher Griffin intended that the limitation should take effect at either of these periods—whenever it was found that William B. Griffin had no issue living—after his death, this would include an indefinite failure as well as a failure at a definite time, to wit, the death of W. B. The first, having a tendency to perpetuity, would be too remote, and therefore void, and the second being embraced in the first could not save the limitation. If he, however, intended to restrict this period to the time of the death of W. B. Griffin alone, and then the limitation to take effect if there was no issue, this would be within the life or lives in being, and therefore valid.

Which of these did he intend? This must be determined by the language used, interpreted according to the rules of law. It is well established that the phrase "dying without issue" or "die without issue," when standing alone, before the act of 1853, denoted an indefinite failure, and a limitation over, upon such terms unqualified, has ever been held void for remoteness. There can be no case found contrary to this. See *Anderson* v. *Jackson*, 16 *Johns.* 382, and the numerous cases there discussed. See, also, 2 *Fearne* 443; *Graham* v. *Moore*, 13 *S. C.* 119, and the cases there cited. But it has also been held, on the other hand, that these terms may be qualified by subsequent words, and when thus qualified, so as to be restricted to the death of the first taker, the limitation over will be preserved.

The last and precise point, then, in the case is: Are there any qualifying words in this will which restrict the limitation to Mangum to the death of William B. Griffin? The words most

usually relied on as sufficient to restrict the generality of the phrase dying without issue, are such as these: " Leaving no issue," " issue living," " survivors," and words of like import. It is admitted that there are no such words in this will.

But it is contended that while this is true, yet, inasmuch as the limitation here is to one in existence, and to him by name, that the testator could not have intended an indefinite failure. On the contrary, he must have intended some period when the party named would probably be in existence, to wit, the death of Griffin, the first taker, without issue then living.

There is a class of cases in our reports in which it is held that, where the limitation over can be construed as a personal benefit alone to a party named, then the effect of such construction will operate as a restriction upon the generality of the phrase. And the term " survivor," when unaccompanied with words indicating a transmissible interest, should the survivor not be in being at the happening of the contingency, will generally have this effect. See case of *Mendenhall* v. *Mower, ante,* and the cases there referred to. But where the limitation also embraces a transmissible interest, even the term " survivor" will be impotent to this effect.

Now, have we any reason here to conclude that the limitation to Hillary R. Mangum was intended simply as a personal benefit to him alone, and, in case he had died before Griffin, that all claim as to him would have ended? Is there anything to show that the testator did not intend to convey to him a transmissible interest, to attach at the falling in of the estate of the first taker, either to Mangum or his heirs, as the facts at that time might require? We see nothing in the case which can demand this construction, except that the limitation is to Mangum by name.

There are numerous cases in the books where the limitation over has been held too remote, although one *in esse* is named as the party to take. In fact we have found no case where the naming of one as the party provided for has in itself restricted the generality of the previous words. *Lyon & Norwood* v. *Walker,* 8 *Rich.* 307. There is no reason, therefore, why the well-established meaning of the phrase *dying without issue* should

be changed in this case from an indefinite failure of issue after the death to a failure at the death of the first taker.

Mr. Ferguson, in his very clear argument, made a point on the use of the adverb "then," which deserves notice. This word, as an adverb, means "at that time," referring to a time specified, either past or future. It has no power in itself to fix a time. It simply refers to a time already fixed. The question here is: What time do the words "dying without issue" unqualifiedly fix? Do they fix an indefinite period when there shall be no issue, or do they fix a definite period, to wit, the death of W. B. Griffin? They must have been used with reference to the one or the other, and, having been thus used, the adverb *then* following them would refer to the one or the other, as their proper construction might indicate as the time intended. To assume that the use of the word would, in itself, fix a certain time, and then refer to it, would be giving it a double significance, of which it is not susceptible.

Our conclusion is, that the testator having used in his will those words which, according to well-established principles found in many decisions bearing expressly upon such words, could, before the act of 1853, have no other meaning but an indefinite failure of issue, and this will having been executed before the passage of that act, the limitation over to Mangum is too remote, and, therefore, void. We concur, therefore, in the decree of Judge Wallace on this branch of the case.

Next, as to the Statute of Limitations. Having determined the first question involved against the appellants, which ends all of their interests in this case, it would not be necessary, as a practical question, to consider the exceptions as to the plea of the Statute of Limitations; but this being one of the questions raised in the case, it is perhaps proper that we should decide it.

The Statute of Limitations begins to run at the moment a right of action accrues, and not before. To determine, then, whether the statute is a bar in this case, we must first ascertain when the right of action accrued, if any, to Mangum, and, second, whether the statutory period has elapsed since.

It will be remembered that Mrs. Phœbe Griffin had a life-estate. The life-estate, however, she conveyed to her son, W.

B. Griffin, in 1854, who had at that time a vested fee in remainder in the same land. Thus, W. B. Griffin became possessed in his life-time of both estates. He died in 1861, some three years before his mother, who died in 1864. Now, the question raised is: Did a right of action accrue to Mangum at the death of W. B. Griffin, in 1861, or was he to await the death of Mrs. Phœbe Griffin, the original life-tenant, before he could claim? If the former, then it is admitted that he is barred, more than ten years having elapsed. If the latter, then there may be some doubt.

Under the terms of the will, Hillary R. Mangum's interest could not attach until the expiration of both the life-estate to Mrs. Griffin and the estate in remainder to W. B. Griffin. Now, did the purchase by W. B. Griffin of the life-estate of his mother merge this life-estate into his remainder in such way as that it became extinct, when his remainder expired upon his death? or did it continue to exist after the death of W. B. Griffin, in 1861, up to the death of Mrs. Phœbe Griffin, in 1864?

Merger, as a general rule, takes place whenever a greater estate and a less coincide and meet in one and the same person without any intermediate estate. In such case the less is immediately annihilated, or, in the law phrase, is said to be merged—that is, sunk or drowned in the greater—but they must come to one and the same person, in one and the same right, else, if a freehold be in his own right, and he has a term in right of another, there is no merger. 2 *Bl. Com.* *178. Here the greater and the less were united in the person of W. B. Griffin when he procured the life-estate of his mother. The two then came to one and the same person, in one and the same right, and merger took place.

It follows, then, that at the death of W. B. Griffin, there was no life-estate in the way of Mangum. And if the executory devise to him was a good devise, he could have commenced action at that time. Not having done so, and ten years having elapsed since then up to his death, without action, the statute is a bar.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

McIver and McGowan, A. J.'s, concurred.